**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**
**50 WALNUT STREET, P.O. BOX 419**
**NEWARK, NJ 07101-0419**
**(973) 645-6340**

**WILLIAM J. MARTINI**
**JUDGE**

## LETTER OPINION

September 2, 2009

Peter E. Rhatican
Law Offices of Peter E. Rhatican
27 East Main Street
Mendham, NJ 07945

Diane M. Acciavatti
77 Jefferson Place
Totowa, NJ 07512
*Attorneys for Plaintiff*

Liza M. Walsh
Tricia B. O'Reilly
Connell Foley, LLP
85 Livingston Avenue
Roseland, NJ 07068
*Attorneys for Defendant*

      Re:   *Richard Fritzky v. Aetna Health, Inc., et al*
              Civil Action No. 08-5673 (WJM)

Dear Litigants:

      This matter comes before the Court on a Motion to Dismiss brought by Defendants
Aetna Health, Inc. ("Aetna") and Dr. Ira Klein, M.D. ("Klein") pursuant to Rule 12(b)(6)
of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  Specifically,
Defendants argue that Plaintiff's complaint fails to state a claim for which relief can be

1

granted, because all of Plaintiff's claims are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA").  Oral argument was held on August 26, 2009.  For the reasons stated below, Defendant's Motion to Dismiss is GRANTED without prejudice.

## BACKGROUND

In March 2005, Plaintiff was employed as the Chief Executive Officer of the Meadowlands Regional Chamber of Commerce ("MRCC").  (Pl.'s Cmplt.¶ 1).  At that time, the MRCC entered into a Small Group Health Maintenance Organization Point of Service Contract (the "Plan" or the "Contract") with Defendant Aetna.  (Pl.'s Cmplt.¶ 2).  Pursuant to the Plan, Aetna was obligated to provide services and pay benefits to Plaintiff as part of Plaintiff's employment relationship with MRCC.  (Pl.'s Cmplt.¶ 3).  However, the Plan's coverage was limited to benefits that Aetna determined to be "medically necessary and appropriate."[1]  Plaintiff was covered by the Plan at all times relevant to this action.  The Plan meets the statutory definition of an "employee welfare benefit plan" under ERISA.  29 U.S.C. § 1002(1).

Beginning in October 2005, Plaintiff was diagnosed with a series of medical conditions including sepsis secondary to disseminated meningococcemia.  (Pl.'s Cmplt.¶ 6).  During his hospitalization, Plaintiff suffered from multiple "collateral conditions" that required the amputation of several fingers and toes and one leg.  (*Id.*).  Later that same month, Plaintiff was transferred to a different hospital and then to various rehabilitative care facilities.  (Pl.'s Cmplt.¶ 7). He was re-admitted to the hospital on June 12, 2006.  (Pl.'s Cmplt.¶ 8). Upon his discharge in late June 2006, Plaintiff's treating physician recommended acute rehabilitation.  (Pl.'s Cmplt.¶ 10).  However, through its medical designee Dr. Ira Klein ("Klein"), Aetna determined that acute rehabilitation was not medically necessary and denied the request for coverage.  (Pl.'s Cmplt.¶ 13).  Instead, Aetna approved coverage for subacute rehabilitative care.  (Pl.'s Cmplt.¶ 11).  Plaintiff alleges that Klein's determination that Plaintiff would not benefit from acute care amounted to a wrongful denial of benefits for medically recommended treatment.  (Pl.'s Cmplt.¶ 19).

Plaintiff began receiving the subacute care on June 29, 2006.  (Pl.'s Cmplt.¶ 12). Approximately seven weeks after the initial determination, Aetna reversed its decision and found that Plaintiff was entitled to acute care.  (Pl.'s Cmplt.¶ 16).  Plaintiff's

---

1 The Plan defines "medically necessary and appropriate" as "services or supplies provided by a health care Provider that [Aetna] determine[s] to be (a) necessary for the symptoms and diagnosis or treatment of the condition, Illness or Injury; (b) provided for the diagnosis or the direct care and treatment of the condition, Illness or Injury; (c) in accordance with generally accepted medical practice; (d) not for a Member's convenience; (e) the most appropriate level of medical care that a member needs; and (f) furnished within the framework of generally accepted methods of medical management currently used in the United States.

condition deteriorated, and on August 24, 2006, he was readmitted to the hospital to undergo amputation of his remaining leg.[2]  (Pl.'s Cmplt.¶ 15).  Plaintiff alleges that the amputation was rendered necessary as a result of Defendants' wrongful failure to grant him acute rehabilitative care in June 2006.  (Pl.'s Cmplt.¶ 23).

Plaintiff initially filed his Complaint in New Jersey state court on October 9, 2008. The Complaint contains seven counts: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing with respect to the contracts made with MRCC and its employees; (3) breach of fiduciary duties owed to Plaintiff; (4) wrongful preclusion from the pursuit of day to day affairs and wrongful failure to provide documentation;[3] (5) unjust enrichment; (6) breach of the covenant of good faith and fair dealing; and (7) tortious interference with medical care.  Plaintiff also requested compensatory, consequential, and exemplary damages, punitive damages, damages for pain and suffering, costs, and a jury trial.

On November 18, 2008, Defendants removed the action to this Court, based upon federal question jurisdiction arising out of ERISA.  Presently before the Court is Defendants' motion to dismiss the complaint for failure to state a claim for which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that Plaintiff's claims are completely preempted under ERISA § 502(a), 29 U.S.C. § 1132(a).

## ANALYSIS

### I.   Standard of Review

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  Further, when considering a 12(b)(6) motion to dismiss, a court may take into account only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim.  *Hishon v. King*

---

2 Note that in the parties' briefs, there was some confusion over the exact timeline with respect to when Aetna reversed its decision and when Plaintiff's second leg was amputated.  However, Defendants clarified at oral argument, and Plaintiff did not refute, that Aetna reversed its decision before the amputation took place, such that Plaintiff did receive the acute rehabilitation for at least some period of time.

3 Note that the entire page containing this Count was omitted from the Complaint as it was initially filed.  Plaintiff never moved to amend the Complaint.  Rather, Plaintiff re-served Defendant with a complete copy of the Complaint in December 2008, two months after the action was initiated and one month after it was removed to this Court. Plaintiff never directly provided the Court with a complete copy.

3

*& Spalding*, 467 U.S. 69, 73 (1984).

Although a complaint does not need to contain detailed factual allegations, "the 'grounds' of [the plaintiff's] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level. *See id*. at 1964-65. Furthermore, although a court must view the allegations as true in a motion to dismiss, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F. 3d 187, 211 (3d Cir. 2007).

## II.    PREEMPTION UNDER ERISA

ERISA is a federal statute designed to "'protect… the interests of participants in employee benefit plans and their beneficiaries'" by establishing "substantive regulatory requirements for employee benefit plans and to 'provide for appropriate remedies, sanctions, and ready access to the Federal courts." *Aetna Health v. Davila*, 124 S.Ct. 2488, 2495 (quoting ERISA, 29 U.S.C. § 1001(b)). Congress sought to create a uniform and exclusive regulatory regime for employee benefit plans. Therefore, ERISA contains provisions enacted to preempt state common law actions against benefit plans as well as state attempts at plan regulation. There are two types of preemption under ERISA, complete and express.

### A.    Complete Preemption Under ERISA § 502(a)

ERISA § 502(a) provides in pertinent part that a "civil action may be brought… by a participant or beneficiary… to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). This is referred to as ERISA's civil enforcement scheme. It is designed to be comprehensive as well as exclusive. Therefore, any state law cause of action that attempts to replicate, supplement, or replace this subsection is completely preempted. *Aetna*, 542 U.S. at 209. Furthermore, the preemptive effect of the civil enforcement provision is so extraordinary that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). Therefore, causes of action that fall within the scope of § 502(a) are properly removable to federal court. Once removed, however, they must be dismissed because of complete preemption or converted into a proper ERISA claim. *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 446 (3d Cir. 2003).

To determine whether a claim alleging medical negligence is preempted by ERISA § 502(a), a court must distinguish between decisions related to the administration of or

eligibility for benefits, which "turn on the plan's coverage of a particular condition," and decisions related to medical treatment, which relate to choices made in "diagnosing and treating" a condition. *Pegram v. Herdich,* 530 U.S. 211, 228 (2001) (as qtd. in *Pryzbowski*, 245 F.3d at 273); *DiFelice*, 346 F.3d at 447. Claims related to eligibility and administrative decisions are preempted, whereas claims related to treatment decisions are not. *DiFelice*, 346 F.3d at 447.

However, not all claims fall neatly under one of the two poles. When a claim appears to challenge a mixed eligibility and treatment decision, then the court must consider whether the claim falls within the scope of ERISA § 502(a). *DiFelice,* 346 F.3d at 447; *Pryzbowski v. U.S. Healthcare*, 245 F.3d 266, 273 (3d Cir. 2001). If the claim falls within the scope of § 502(a) and therefore could have been brought as an action pursuant to that subsection, it is completely preempted. *See Aetna,* 542 U.S. at 209 (stating that "[i]n other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)... then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).")

To determine whether a claim could have been brought under § 502(a), it is necessary to break claims down into their most basic elements to determine the precise nature of the alleged harm and to be wary of "artful pleading." *DiFelice*, 346 F.3d at 448. Even if a claim is couched in the language of negligence or tort, if the actual harm complained of by the plaintiff is a denial of benefits, then the claim falls within the scope of § 502(a) and is completely preempted. *See Aetna*, 542 U.S. at 214 (finding that distinguishing between "pre-empted and non-pre-empted claims based on the particular label affixed to them [by the plaintiff] would elevate form over substance and allow parties to evade the preemptive scope of ERISA simply by relabeling their contract claims as claims for tortious breach of contract."); *see also Pryzbowski,* 245 F.3d at 274 (finding that a federal court may look beyond the face of a complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law).

Also important in this analysis is determining whether the insurance company directly provided the plaintiff's medical treatment. *Aetna,* 542 U.S. at 220. If the company did not provide any of the treatment itself and did not hold itself out as doing so, then it was acting in an administrative capacity only. *Id.* Therefore, any decisions it made were purely administrative in nature, even if they required the use of medical discretion. *Pryzbowski,* 245 F.3d at 274; *see also DiFelice*, 346 F.3d at 449 (finding that because the defendant insurance company did not directly provide any medical care, its "use of medical judgment could only have led to an eligibility, not a treatment, decision.")

Here, although Plaintiff's Complaint contains allegations of negligence, tort, and breach of contract, it is clear that underlying each count is a challenge to Defendant's

5

determination that acute rehabilitation was not medically necessary, and that Plaintiff is actually complaining about the denial of benefits.[4]  Therefore, the Court must at the outset consider whether Defendant's medical determination was either clearly an eligibility decision or clearly a medical treatment decision.  Because Aetna's decision involved medical discretion and also eligibility for benefits, it appears that Plaintiff's claims do not fall neatly under either pole but rather contain aspects of both treatment and coverage.

However, Plaintiff does not make any allegations that Defendant directly provided any medical care or held itself out as doing so.  Therefore, even though Aetna was required to use medical discretion in its determination, any decision it reached could only have related to treatment.  Moreover, once Plaintiff's claims are properly viewed as challenges to a medical necessity determination, it is apparent that they could have been brought under § 502(a) as an action for benefits.  Plaintiff could have filed a claim in federal court pursuant to that subsection to require Aetna to provide the acute rehabilitation.  Alternatively, Plaintiff could have paid for the treatment himself and sued for reimbursement afterwards.  The claim is therefore completely preempted by ERISA § 502(a).

Plaintiff argues that because ERISA and the Plan both contain an exhaustion requirement, he never had the opportunity to file a § 502(a) action and therefore that his claims should not be preempted.  Under this argument, because the terms of ERISA § 503(2) and the Plan prevent a party from filing a lawsuit until after turning to all internal administrative remedies, Plaintiff could not have filed a § 502(a) action  until after the results of his administrative appeal, at which point his leg had already been amputated and it was too late.  However, this argument is unavailing because Plaintiff overlooks the exceptions to the exhaustion requirement contained with the caselaw and the Plan itself.

There are three exceptions to the exhaustion requirement: (1) when a plaintiff is threatened with irreparable harm; (2) when exhaustion would be futile; and (3) when a plaintiff has been denied meaningful access to the administrative procedures.  *Majka v. Prudential*, 171 F.Supp.2d 410, 414 (D.N.J. 2001).  Moreover, the plan itself provides for an exception when "serious or significant harm to Member has occurred or will imminently occur."  (The Plan, Section C entitled "Claim Determination Procedures/ Complaints and Appeals" at 36, attached as Ex. B to the Certification of Tricia B. O'Reilly 12/05/08).  Given the gravity of Plaintiff's medical condition, a court would likely have excused Plaintiff's failure to satisfy the exhaustion requirement.  Even if it did not, the very existence of the exceptions demonstrates that a § 502(a) claim can be filed prior to exhaustion, regardless of whether the claim will ultimately be successful.

---

[4]At oral argument on August 26, 2009, Plaintiff's counsel conceded that the Complaint had been artfully pled in an effort to allege negligence and obtain damages for pain and suffering. The Court notes that the Complaint contains requests for compensatory, consequential, and exemplary damages, punitive damages, damages for pain and suffering, and a jury trial, none of which are available under ERISA.

Therefore, the exhaustion requirement did not prevent Plaintiff from filing a lawsuit. Plaintiff's Complaint is completely preempted and must be dismissed or converted into an ERISA claim.

**B.    Express Preemption under ERISA § 514(a)**

Because Plaintiff's claims are completely preempted by § 502(a), this matter can be resolved without an examination of § 514(a), ERISA's second preemption provision. However, it is worth briefly noting that all of Plaintiff's claims are also preempted by §514(a).

A state law claim is expressly preempted by ERISA § 514(a) if the claim "relates to" an employee benefit plan.  29 U.S.C. § 1144(a).  The Supreme Court has given the phrase "relates to" the broadest common-sense meaning, holding that a state law relates to a benefit plan if it has any "connection with or reference to" such a plan.  *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985).  This extends to include even state laws that were not intended to affect employee benefit plans.  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987).  However, preemption by § 514(a) does not give rise to federal subject matter jurisdiction.  *Pryzbowski*, 245 F.3d at 275.Therefore, a claim that is preempted by § 514(a) cannot be removed to federal court unless there is an alternate source of jurisdiction.  Alternate sources are most often supplemental jurisdiction or preemption by § 502(a).

To determine if a specific claim is preempted by § 514(a), a court must undertake the same analysis described above and determine whether Plaintiff is challenging a decision related to the administration of or eligibility for benefits or whether Plaintiff is challenging a medical treatment decision.  The Third Circuit has routinely held that claims against healthcare companies for denial of benefits, regardless of the particular language or label used by the plaintiff, are expressly preempted.  *See Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 278 (3d Cir. 2001) ("suits against insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract" are preempted by § 514(a)"); *Pilot Life*, 481 U.S. at 48 (a plaintiff's claims for tortious breach of contract and bad faith related to the denial of benefits and without a doubt were preempted by § 514(a)); *Majka v. Prudential*, 171 F. Supp.2d 410, 413 (2001) ("there is no question that ERISA [§ 514(a)] preempts Plaintiff's state law claims for breach of contract and breach of the implied duty of good faith and fair dealing.").  The reason for this is that the decision whether a requested benefit or service is covered by the ERISA plan falls within the scope of the administrative responsibilities of the insurance company and therefore "relates to" the employee benefit plan.  *Id.* at 278.

Here, for the reasons described above, it is clear that regardless of the precise language used, Plaintiff is in fact complaining about the denial of benefits.  Therefore, the

challenged decision was administrative in nature.  Due to the nature of Plaintiff's claims, they necessarily all "relate to" the Plan.  Thus the claims are expressly preempted by § 514(a).  This court has jurisdiction to make this determination because the claims are also preempted by § 502(a) and therefore were properly removed to federal court.[5]  The claims must be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**.  Plaintiff's Complaint is dismissed without prejudice.  Further, Plaintiff's requests for compensatory, consequential, and exemplary damages, punitive damages, damages for pain and suffering, costs, and a jury trial are denied.  Plaintiff has 30 days to file an amended complaint.


/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

---

[5]Note that even if all of Plaintiff's counts were not preempted by § 502(a), as long as there was one count preempted by § 502(a), the Court could choose to exercise supplemental jurisdiction to consider the remaining counts.  28 U.S.C. § 1367 authorizes a district court to exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Thus, the requirements for supplemental jurisdiction are: (1) the federal claims must have substance sufficient to confer subject matter jurisdiction; (2) the state and federal claims must derive from a common nucleus of operative fact; and (3) the plaintiff's claims must be such that he would ordinarily be expected to try them all in one judicial proceeding.  These requirements are met in the present circumstances.